<u>NOT FOR PUBLICATION</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAMELA T. HILLS,<br><br>      Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>      Defendant. | CIVIL NO. 06-0741(NLH)<br><br><br>**OPINION** |

**APPEARANCES:**

Robert A. Petruzzelli, Esquire
Jacobs, Schwalbe & Petruzzelli, P.C.
Woodcrest Pavilion
Ten Melrose Avenue, Suite 340
Cherry Hill, NJ 08003

    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Susan C. Branagan, Esquire
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

    Attorney for Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of the

Social Security Administration ("the Commissioner"), denying the

application of Plaintiff for Disability Insurance Benefits and
Supplemental Security Income ("Social Security benefits") under
Title II and Title XVI of the Social Security Act.  42 U.S.C. §
401, et seq.  The issue before the Court is whether the
Administrative Law Judge ("ALJ") erred in finding there was
"substantial evidence" that Plaintiff was not disabled from
January 12, 2000[1] through July 7, 2004.  For the reasons stated
below, this Court will affirm the ALJ's decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Pamela T. Hills, worked for the State of New
Jersey as a Mental Retardation Aide (R. at 29) until January 12,
2000 (R. at 45), at which time Plaintiff claimed she could no
longer work due to a herniated disc, knee and leg pain, an
internal cyst, asthma, nerve compression, and interrupted sleep
(R. at 27.)  Plaintiff applied for Social Security benefits, and
her claim was denied both initially and on reconsideration.  (R.
at 62-71.)  Plaintiff requested a hearing before the ALJ, and the
ALJ determined that although Plaintiff had some back, leg, and
knee pain and was unable to perform her past relevant work, she
was not precluded from performing all work activity.  (R. at 28.)
Plaintiff appealed the ALJ's decision, and the Appeals Council

---

[1]Plaintiff's application for disability insurance benefits
indicated she had not worked since January 17, 2000 (R. at 91);
however, Plaintiff testified (and the ALJ opinion indicates) she
had not worked since January 12, 2000 (R. at 45).

denied Plaintiff's request for review.  (R. at 4.)  Plaintiff now seeks review by this Court.

## II.  DISCUSSION

### A.  Standard of Review

Title 42 U.S.C. § 405(g) provides for the judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  The reviewing court must uphold the Commissioner's factual findings where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993).  Substantial evidence means "more than a mere scintilla" of evidence (i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).

3

"[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951))). However, a reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. If there is substantial evidence of record to support the Commissioner's findings, they are conclusive, even "where [the] evidence in the record is susceptible to more than one rational interpretation." Alexander v. Shalala, 927 F. Supp 785, 791 (D.N.J. 1995); aff'd per curiam 85 F.3d 611 (3d Cir. 1996).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).

4

An "ALJ must review all pertinent medical evidence and explain his conciliations and rejections," <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 122 (3d Cir. 2000), but "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," <u>Hur v. Barnhart</u>, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  An ALJ must also consider and weigh all of the non-medical evidence before him.  <u>Burnett</u>, 220 F.3d at 122 (citing <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir. 1983)); <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981).

Apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his or her decision by application of the proper legal standards.  <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).  Even if the Commissioner's factual findings are supported by substantial evidence, a reviewing Court may reverse the decision because of the Commissioner's failure to use the correct legal standards.  <u>See Strickland v. Harris</u>, 459 F.2d 1103, 1108 (5th Cir. 1980).

**B.  Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of a Period of Disability and Disability Insurance Benefits as "the inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A); see Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  Under this definition, a claimant qualifies as disabled only if his physical or mental impairments are of such severity that "he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 1382c(a)(3)(B); see Plummer, 186 F.3d at 427-28.

The Commissioner has promulgated regulations that require application of a five-step sequential analysis in determining disability:

1.   If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work she has done in the past ("past relevant work") despite the severe

impairment, she will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's
     ability to perform work ("residual functional
     capacity"), age, education, and past work experience to
     determine whether or not she is capable of performing
     other work which exists in the national economy.  If
     she is capable, she will be found "not disabled."  If
     she is incapable, she will be found "disabled."

20 C.F.R. § 404.1520(b)-(f); see Plummer, 186 F.3d at 428.

This five-step process involves a shifting burden of proof.

See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150,

1153 (3d Cir. 1983).  In the first four steps of the analysis,

the burden is on the claimant to prove every element of her claim

by a preponderance of the evidence.  See id.  Then, "[o]nce a

claimant has proved that [s]he is unable to perform [her] former

job, the burden shifts to the Commissioner to prove that there is

some other kind of substantial gainful employment [s]he is able

to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987);

see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

C.   **Analysis**

Following his evaluation of the evidence, the ALJ found that

Plaintiff had not engaged in substantial gainful activity since

the alleged onset of disability (Step One).[2]  (R. at 31.)   The

───────────────

[2]Even though in his "Findings" section at the end of his
decision the ALJ stated that Plaintiff had not engaged in any
substantial gainful activity since the alleged onset of her
disability in January 2000, that finding is contradicted by the
ALJ's analysis in the beginning of his decision.  In his
"Evaluation of the Evidence" section, the ALJ noted that
Plaintiff's earnings record reflected income of $12,504.00 in

ALJ acknowledged that Plaintiff's impairments of obesity, disc bulge, radiculopathy[3], degenerative disc disease, status post laminectomy[4], and lateral displacement of the left patella[5] were severe (Step Two).  (R. at 19, 31.)  The ALJ found, however, Plaintiff's impairments did not meet or equal the criteria of a "listed impairment," see 20 C.F.R. Part 404, Subpart P, Appendix 1, and that the record did not establish Plaintiff had been disabled for any continuous and uninterrupted period of 12 consecutive months (Step Three).  (R. at 19, 32.)  The ALJ also found that although Plaintiff was unable to perform her past relevant work (Step Four), she was capable of performing other work in the national economy (Step Five).  (R. at 32.)  The ALJ

_____

2000, despite the fact that Plaintiff claimed to have worked only a few weeks in January of that year.  (R. at 18-19.)  The ALJ stated, however, that he did not need to decide the Step One issue because he concluded that Plaintiff failed at Step Three to establish that she was not disabled for any continuous and uninterrupted period of twelve consecutive months.  (R. at 18-19.)  Because the ALJ determined that Plaintiff did not meet any of the other four steps in the sequential-step analysis, this contradiction does not affect the Court's consideration of Plaintiff's appeal.

[3]Radicular syndrome is "the symptoms resulting from pressure on or damage of the roots of the spinal nerves."  STEDMAN'S MEDICAL DICTIONARY 1696 (27th ed. 2000).

[4]Laminectomy is "a surgical operation in which the posterior arch of a vertebra is removed."  STEDMAN'S MEDICAL DICTIONARY 1696 (27th ed. 2000).

[5]Lateral displacement of the left patella means dislocation of the left knee.

accordingly concluded Plaintiff was not disabled.  (R. at 33.)

More specifically with regard to the ALJ's findings, the ALJ found that even though Plaintiff had some back, leg and knee pain, and was unable to return to her past relevant work, he did not find that she was precluded from doing any work.  (R. at 28.) The ALJ noted that several doctors, including Dr. McAlpin, Dr. Hershkowitz, and Dr. Anapolle, restricted her work for only a limited period of time, and cleared her to return to work, although not necessarily at the level she had performed before. (R. at 28-29.)  Ultimately, the ALJ found that Plaintiff could "lift and carry 10 pounds occasionally and less than 10 pounds frequently, [] stand for 2 hours (in 30 minute intervals), walk for one hour (in 20 minute intervals), and sit for up to 6 hours (in one hour intervals) during an 8-hour workday," but she had "exertional limitations which restrict her to only occasional bending, stooping, and climbing of stairs, and which preclude her from climbing ladders."  (R. at 32.)  Based on these considerations, the ALJ, with the aid of a Vocational Expert, determined that although Plaintiff could no longer perform her past relevant work, she was capable of performing sedentary work.

Plaintiff presents the following issues for review: (1) whether the ALJ properly weighed the medical evidence of record; (2) whether the ALJ properly determined Plaintiff's residual functional capacity; (3) whether the ALJ properly considered

Plaintiff's impairments in conjunction with Step Three; and (4) whether the ALJ properly applied Social Security Rulings 83-10, 83-12, and 96-9P.

**1.   Whether the ALJ properly weighed the medical evidence in the record**

Plaintiff makes two arguments to support her contention that the ALJ improperly weighed the medical evidence in the record. Plaintiff first argues the ALJ failed to weigh all of the medical evidence, and second, that the Commissioner failed to give the appropriate probative value to the treating physician's report. As discussed below, each of these arguments is unpersuasive.

**a)   Whether the ALJ properly weighed all of the medical evidence**

Plaintiff argues the ALJ failed to consider all of the medical evidence, and instead selectively relied on the reports of treating physician Dr. Anapolle and omitted altogether the reports of treating physician Dr. Hershkowitz.  Plaintiff specifically points to certain pieces of evidence she claims were ignored or misconstrued by the ALJ.  The record, however, does not support Plaintiff's argument and instead demonstrates the ALJ properly weighed all of the medical evidence.

First, Plaintiff argues the ALJ failed to note that Dr. Anapolle, Plaintiff's knee doctor, found her able to return to sedentary work with regard to her knee injury only.  Contrary to Plaintiff's assertion, the ALJ stated in his discussion of

10

medical reports from August 7, 2001 and September 19, 2001 that
Dr. Anapolle was treating Plaintiff for her knees. (R. at 22-
23.) Although the ALJ did not state explicitly that Dr. Anapolle
released Plaintiff to sedentary duty "with regard to her knee
injuries only," it was implied by the ALJ's repeated references
to Dr. Anapolle as Plaintiff's knee doctor. Id. Thus, the ALJ
did recognize that Dr. Anapolle cleared Plaintiff for work
regarding her knee injury only.[6]

Second, Plaintiff claims the ALJ did not explicitly mention
that Dr. Anapolle described Plaintiff's work status as "out of
work" in several medical reports (including those of November 28,
2001, December 19, 2001, April 12, 2002, May 6, 2002, and May 21,
2002). However, the ALJ referred to each of the reports in his
opinion and therefore presumably considered each report in making
his decision. (R. at 23-24.) Even if the ALJ somehow failed to
consider the work status portions of the reports, the
descriptions of work status as "out of work" are not equivalent
to Dr. Anapolle keeping Plaintiff "out of work entirely" as
Plaintiff asserts. (R. at 184-86, 194, 196-97.) Even if Dr.

---

[6]Plaintiff makes this argument in support of her contention
that she was unable to work due to injuries in addition to her
knee injury. Because Dr. Anapolle treated Plaintiff only for her
knee injury, he did not make a medical diagnosis as to her other
injuries. It does not follow, however, that the ALJ over-relied
on Dr. Anapolle's opinion. As discussed more fully below, the
records from Plaintiff's other doctors who treated her for back
and leg pain also support the ALJ's conclusion that Plaintiff was
not disabled.

11

Anapolle intended to keep Plaintiff out of work entirely, there
is no indication that he intended to preclude her from work other
than her prior position as a mental retardation aide.  Id.
Furthermore, even if Dr. Anapolle intended his description of
work status as "out of work" to keep Plaintiff out of all types
of work, these reports only cover six months, which is less than
the 12 months required by statute.  See 42 U.S.C. § 423(d)(1)(A);
20 C.F.R. § 404.1505.

Third, although Plaintiff correctly points out that the ALJ
did not specifically reference Dr. Anapolle's reports of November
7, 2001 (R. at 199), November 20, 2001 (R. at 198), December 4,
2001 (R. at 195), January 16, 2002 (R. at 192), and July 9, 2002,
this does not mean the ALJ failed to consider these reports.  The
ALJ is not required to discuss in "every tidbit of evidence
included in the record."  Hur, 94 Fed. Appx. at 133.  Even if the
ALJ did not consider these reports, however, the reports do not
contradict the ALJ's finding that Plaintiff was "not disabled."

Fourth, Plaintiff asserts the ALJ left out the critical
portion of Dr. Anapolle's report of August 13, 2002 that
indicated Plaintiff was "under ongoing care by other physicians
for a concomitant low back injury which also affects her current
activity level."  (R. at 179.)  Dr. Anapolle's statement
regarding Plaintiff's back injury and treatment was not a
relevant medical opinion, however, as Dr. Anapolle was treating

12

Plaintiff for her knees only.  The ALJ explicitly referenced the relevant recommendations by Dr. Anapolle-i.e., those related to Plaintiff's knees.  (R. at 25.)

Fifth, contrary to Plaintiff's contention, documentation from treating physician Dr. Douglas Hershkowitz was not "total[ly] absen[t] from the opinion," (Pl. Br. at 11) and was in fact referenced several times.  (R. at 20-22, 25.)  Plaintiff specifically claims the ALJ ignored Dr. Hershkowitz's note of July 12, 2002 that indicated he had been treating Plaintiff since May 1, 2000 and had kept her out of work since then.  The form filled out by Dr. Hershkowitz on July 12, 2002, however, merely indicated Plaintiff was "out of work" since May 1, 2000 (R. at 373), and not that Dr. Hershkowitz had "kept her out of work since then" (Pl. Br. at 12).  Plaintiff further contends that the record does not indicate that Dr. Hershkowitz ever "return[ed] Plaintiff to work."  Contrary to that contention, the record does not indicate that Dr. Hershkowitz ever reconsidered his estimate on July 12, 2002 that Plaintiff could return to work on September 17, 2002.  (R. at 373.)  In fact, Dr. Schwartz's certificate of August 29, 2002,[7] which states Plaintiff would be able to return to work on September 2, 2002 (R. at 222) further supports Dr. Hershkowitz's estimate.

_____

[7]The handwritten date is slightly illegible; it could either be August 24, 2002 or August 29, 2002.

13

Finally, in support of her contention that the ALJ did not properly review the medical evidence, Plaintiff points to several specific dates where Plaintiff received recommendations and care from Dr. Bruce Hairston (from June 2003 to February 2004). Plaintiff does not assert that the ALJ did not consider the evidence, and in fact, the ALJ referred to each of the dates mentioned by Plaintiff. Furthermore, the ALJ's opinion does not contradict the specific facts pointed to by Plaintiff with regard to these dates. In conjunction with Dr. Hairston's treatment, Plaintiff states that she saw Dr. O'Shea on December 5, 2003, and that he did not return Plaintiff to work. The ALJ does not dispute this. Further, Dr. O'Shea's letter of December 5, 2003 does not even mention Plaintiff's capacity to work and therefore does not preclude her from returning to work, whether it be to her prior position or some other position. (R. at 512.) In fact, Dr. O'Shea reported Plaintiff's sitting tolerance was 20-30 minutes and her standing tolerance was 20-30 minutes, which are indicative of some work capability. Id.

Based on his review of all pertinent medical evidence, the ALJ explained his conciliations and rejections, see Burnett, 220 F.3d at 122, and thus, the ALJ properly weighed all of the medical evidence in determining Plaintiff is not disabled.

> **b)** **Whether the Commissioner gave the appropriate probative value to the treating physicians' reports**

14

Plaintiff argues the ALJ failed to give appropriate consideration to the reports of Drs. Anapolle, Hairston, and Hershkowitz.  Plaintiff further argues that "just because [] Plaintiff sporadically experiences a few good days does not mean [she] is cured of the severe impairment or has experienced a sustained improvement in her residual functional capacity."  (Pl. Br. at 14.)  Plaintiff's arguments are unpersuasive.

First, Plaintiff argues that the ALJ's analysis focuses on Dr. Anapolle's opinion that Plaintiff could return to sedentary work.  Plaintiff maintains that Dr. Anapolle's opinion was only with regard to Plaintiff's knees, and that he did not consider her back injuries, obesity, and other impairments in making his decision.  The record, however, does not indicate that any of Plaintiff's other physicians held the medical opinion that Plaintiff could not return to work.

Indeed, the record indicates Plaintiff's impairments, to the extent of preventing her from working, were interrupted by periods of being able to perform at least sedentary work.  For example, on March 10, 2000, three months after her injury, Dr. Thomas Dwyer "cleared [Plaintiff] to return to normal duty."  (R. at 288.)  On December 1, 2000, Dr. Hershkowitz noted his intention to return Plaintiff to work in January 2001, ten months after Dr. Dwyer cleared her for work (R. at 337), and the record does not indicate he changed his opinion regarding this return

15

date.  Further, on February 23, 2001, Dr. Hershkowitz's statement that "[Plaintiff] does not feel that she can return to work because of the pain" was not indicative of a medical opinion that she could not work, but rather was Plaintiff's own subjective opinion on her ability to work.  (R. at 361.)  Plaintiff saw Dr. Hershkowitz again, but his report of May 4, 2001 does not state whether or not Plaintiff could return to any kind of work, (R. at 157), and she did not return to Dr. Hershkowitz until July 12, 2002 (R. at 175).

In the interim, Plaintiff sought treatment from Dr. Anapolle.  (R. at 177.)  On August 7, 2001, seven months after Plaintiff was returned to work by Dr. Hershkowitz, Dr. Anapolle opined Plaintiff was "able to return to sedentary duty."  (R. at 211.)  Similarly, Dr. Anapolle expressed in his subsequent reports of September 19, 2001 (R. at 208), October 10, 2001 (R. at 207), and October 17, 2001 (R. at 206) that Plaintiff could continue sedentary duties.  After Plaintiff underwent knee surgery on October 29, 2001 (R. at 203), Dr. Anapolle's reports described her work status as "out of work" (R. at 184-86, 191-99, 202) until June 11, 2002 (eight months later), when he opined she could return to sedentary duty (R. at 182).

As discussed above, Plaintiff's argument that the July 12, 2002 form filled out by Dr. Hershkowitz indicates he had kept her out of work since May 1, 2000 is unfounded since it merely

16

indicates Plaintiff was "out of work" (R. at 373), and not that Dr. Hershkowitz had "kept her out of work" (Pl. Br. at 12). Even if the form somehow indicated Dr. Hershkowitz's medical opinion was that Plaintiff should be out of work, there is no indication he opined she should be out of all kinds of work rather than just her prior position. Similarly, the letter by Dr. Bruce Hairston on March 24, 2003 indicating Plaintiff "should still continue with medical leave of absence" most likely referred to her prior position rather than serving as an opinion that she could not perform any job. (R. at 492.)

As indicated, the record does not show that Plaintiff's impairments prevented her from working for a continuous and uninterrupted period of twelve consecutive months. Therefore, Plaintiff's argument that the ALJ did not give the appropriate probative value to the treating physicians' reports must fail.

**2.   Whether the ALJ properly determined Plaintiff's residual functional capacity**

Plaintiff argues the ALJ improperly determined Plaintiff's residual functional capacity. Plaintiff correctly asserts "the RFC assessment must first identify the individual's functional limitations and restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in Paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945." See SSR 96-8p. Plaintiff fails to recognize, however, the ALJ assessed her work-related abilities on a

17

function-by-function basis when he found Plaintiff could "lift and carry 10 pounds occasionally and less than 10 pounds frequently, [] stand for 2 hours (in 30 minute intervals), walk for one hour (in 20 minute intervals), and sit for up to 6 hours (in one hour intervals) during an 8-hour workday," but had "exertional limitations which restrict her to only occasional bending, stooping, and climbing of stairs, and which preclude her from climbing ladders."  (R. at 32.)

The ALJ referenced Dr. Anapolle's recommendations of "maximum lifting of 30 pounds; standing and walking limited to 40 minutes per hour; and avoidance of repetitive bending, squatting, kneeling, crawling, running, and climbing" and Plaintiff's own testimony that "she could lift 10 pounds and stand for 30 minutes at a time."  (R. at 29.)  Although not explicitly referenced, the record also indicated Dr. O'Shea noted her sitting tolerance was 20-30 minutes and her standing tolerance was 20-30 minutes.  (R. at 512.)  The ability to lift, carry, stand, walk, and sit are all "physical functions."  20 C.F.R. § 505.1521.  The limitations on Plaintiff as indicated by the record are equivalent to those for sedentary work (i.e., lifting no more than 10 pounds at a time[;] occasionally lifting or carrying articles like docket files, ledgers, and small tools; sitting; and occasionally walking and standing). Id. § 404.1567(a).

Plaintiff further claims unpersuasively that the ALJ ignored

Plaintiff's non-exertional limitations including her medication and its effects on Plaintiff's concentration.  Subjective complaints of pain and other factors, including the side effects of any medication taken, must be considered as part of a residual functional capacity evaluation, and indeed the ALJ considered the effects of Plaintiff's medication when he evaluated her subjective complaints.  (R. at 27-28.)  The ALJ referenced the types of medication Plaintiff was taking, and specifically cited to Plaintiff's testimony that the medication caused side effects including drowsiness.  (R. at 27.)  Although Plaintiff points to Dr. Hairston's recommendation that "she is not to drive while taking this medication if she feels effected [sic] cognitively in any way," Plaintiff testified she in fact drove a car (R. at 42), did normal household chores (R. at 42-43), and watched television and movies (R. at 43).  In considering the entire record, the ALJ indicated that "while the symptoms alleged by the claimant are generally credible, they appear to be somewhat exaggerated and do not establish disability."  (R. at 28.)

    Plaintiff further argues the ALJ did not fully consider and evaluate her obesity pursuant to SSR 02-01p, but this argument is without merit as well.  The ALJ's finding that Plaintiff was capable of performing only sedentary work took into account her

antalgic gait[8] and difficulty rising from a chair, presumably caused at least in part by her obesity.  Additionally, Dr. Anapolle, who repeatedly opined Plaintiff could perform sedentary work, was fully aware of her obesity. (R. at 185, 205, 210.)

Consequently, the ALJ properly assessed Plaintiff's Residual Functional Capacity.

### 3.    Whether the ALJ properly considered Plaintiff's impairments in conjunction with Step Three

Plaintiff argues the ALJ failed to appropriately consider Plaintiff's impairments in conjunction with Step Three of the sequential step evaluation.  Plaintiff asserts the ALJ's "mere mention" of the impairment listings does not constitute a true analysis, particularly with respect to Plaintiff's obesity.  This argument is unpersuasive.  The ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" as long as there is "sufficient development of the record and explanation of findings to permit meaningful judicial review."  Jones v. Barnhart, 364 F.3d 501 (3d Cir. 2004).  Here, the record was fully developed and the ALJ's evaluation was sufficient to permit meaningful judicial review.

The ALJ thoroughly evaluated the medical evidence and

---

[8]Antalgic gait is "a manner of walking or gait which aims to shorten as much as possible the length of time that a painful limb must support the weight of the body."  STEDMAN'S MEDICAL DICTIONARY 1696 (27th ed. 2000).

20

properly determined Plaintiff was able to "ambulate effectively," which is defined as having no extreme limitation on the ability to walk and having sufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device.  Plaintiff testified she had never been prescribed any form of assistive walking device and could walk "halfway to around the block" and on the treadmill at physical therapy.  (R. at 50.)  Evidence of Plaintiff's antalgic gait and difficulty standing from a seated position, including the contribution by Plaintiff's obesity, were insufficient to show "ineffective ambulation."  The ALJ thus properly concluded Plaintiff's obesity, alone or in conjunction with her other impairments, did not satisfy the criteria of an impairment listing at Step Three in the sequential step analysis.

### 4. Whether the ALJ properly applied Social Security Rulings 83-10, 83-12, and 96-9P

Plaintiff claims the ALJ failed to properly apply Social Security Rulings 83-10, 83-12, and 96-9p, which an ALJ uses in evaluating whether an individual can perform other work. Plaintiff correctly points out that SSR 83-10 provides definitions for the various exertional categories, SSR 83-12 expressly addresses the alternate sitting and standing scenario, and SSR 96-9p requires that the RFC be specific with regard to the frequency of the need to sit and stand.

Plaintiff argues an unskilled job with an option to sit or

21

stand is atypical.  This position is contrary to the testimony of the Vocational Expert, who found that hundreds of thousands of sedentary unskilled jobs exist in the national economy that could be performed sitting or standing or in combination.  (R. at 56.) The ALJ correctly considered the Vocational Expert's testimony, particularly in light of SSR 83-12, which indicates that "in cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." SSR 83-12.  Plaintiff offers no reason why the ALJ should not have relied on the Vocational Expert's opinion.

Here, where the Vocational Expert has been presented with an appropriate hypothetical individual, the rulings cited by Plaintiff do not supercede the opinion of the Vocational Expert. An ALJ may present hypothetical individuals to a vocational expert to elicit testimony regarding jobs a claimant can perform in the national economy.  Social Security HALLEX § I-2-674.D; see Dumas v. Schweicker, 712 F.2d 1545, 1552 (2d Cir. 1983). Contrary to Plaintiff's argument, the record does not indicate she needs to take frequent, unscheduled breaks during the day. The ALJ presented a hypothetical individual with the same abilities as Plaintiff to the Vocational Expert (R. at 54-55), and the Vocational Expert expressly took into consideration Plaintiff's need to alternate sitting and standing (R. at 56).

The ALJ was permitted to rely on the Vocational Expert's testimony when he determined Plaintiff's ability to work.

**III. CONCLUSION**

For the reasons expressed above, the ALJ's decision is supported by substantial evidence, and the decision of the ALJ is affirmed.  An accompanying Order will be issued.

Date: June 28, 2007             s/ Noel L. Hillman

At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.